## MAYBIN v. MOORMAN.

A partner of a mercantile firm, who was also its salaried book-keeper, drew $1,000 from the firm and purchased in his own name ten shares of bank stock; charging himself with this amount on the books, which were open to the inspection of the other partners. This partner died and the firm proving insolvent, the other partners sought

to have this bank stock declared partnership assets. *Held*, that the stock was not the property of the firm, but of the individual estate of the deceased partner; especially so, as at the time of his purchase his salary to a large amount was due and unpaid.

Before WALLACE, J., Newberry, November, 1882.

The opinion fully states the case. The Circuit decree, omitting its statement of the facts, was as follows:

First, as to the bar of the statute. The money was withdrawn on June 29, 1871. Mr. Moorman died October 5, 1873. This action was commenced in May, 1878. If the statute commenced to run on June 29, 1871, more than six years and nine months elapsed before the commencement of the action, and it would be barred. But if the statute began to run on October 5, 1873, the date of the death of Robert Moorman, and the date, therefore, of the dissolution of the partnership, only four years and seven months elapsed from that date to the commencement of this action, and it would not be barred.

One partner cannot sue another at law, and because he has no right of action the statute of limitations does not run against what does not exist. At law they were one person. In equity, where their accounts must be settled, each partner is considered as holding for all others, and never, while the partnership lasts, as against any other. Hence, as to partnership assets the statute cannot begin to run during the partnership. When the partnership is dissolved the joint tenancy is ended, and the statute attaches to their subsequent transactions as it does to the transactions of others who do not sustain partnership relations. *Montgomery* v. *Montgomery, Rich. Eq. Cas.*, 64. According to this rule the action is not barred by the statute.

The next question, did the circumstances of this case have the effect to make the bank stock the private property of Robert Moorman? is not settled by any case in our own reports to which I have been referred. In the case of *McCarly* v. *McFarlane*, 2 *DeSaus.*, 239, the court refused to decree restitution of money taken out of one firm and expended for stock put in another, the goods purchased being undistinguishable from the goods purchased with other funds. When capital is put into a partnership.

by agreement among the partners, each has an interest in it proportioned by the terms of agreement. For one partner to take out a part and apply to his private use without the consent of the other partners would be applying the property of others to his private use. And if by so doing the property thus taken became the private property of the individual partner, the partnership assets might be suddenly transferred from primary liability to firm creditors to primary liability for the individual debts of the partner. It would seem, therefore, consonant to reason and justice that when one partner takes to his own use and benefit assets of the firm, restitution should be decreed, unless intervening equities, as in our case of *McCarly* v. *McFarlane, supra*, prevent.

The decisions in many of the other states are to the same effect.. The rule laid down in *Wait's Actions and Defences*, 119, and in support of which a large number of cases from different states are cited, is as follows: "So one of the partners cannot use .the partnership property or funds to operate for his own private benefit, or purchase with them property in his own name; but he would be required to account to the firm, not only for the funds and property, but also for the profits."

It may be added, that as each partner is the agent of the firm within the scope of the partnership, if he purchases property with the funds of the principal, the property is the principal's. In this case the bank stock, in which the funds of the partnership were invested, still stands upon the books of the bank just as it was entered. There have been no transfers, and there is no difficulty about its identification.

It is but just that I should add that the master finds, and it was outspoken by counsel at the hearing, that there is no intentional wrong-doing intended, even to be suggested, by this proceeding. The partners were life-long, intimate friends, with absolute confidence in the perfect integrity of each other. Three of them are dead, and the parties to this action, with unimpaired confidence in and affection for those who have died, simply desire that the legal right to the bank stock may be settled for the benefit of creditors.

It is adjudged and decreed, that the bank stock of the Newberry Bank purchased by Robert Moorman with funds of the

partnership between himself and A. G. Maybin and Reuben S. and Pettus W. Chick, and still standing on the books of the bank in the name of Robert Moorman, together with the dividends thereon, is the property of the late firm, and that A. G. Maybin, as survivor, is entitled to recover the possession of it. It is ordered, that plaintiff have leave to apply at the foot of this decree for such further orders as may be necessary to carry it into effect. It is further ordered, that the costs be paid out of the proceeds of the bank stock.

From this decree defendant appealed upon the following grounds: Because his honor erred in holding, 1. That the bank stock described in the pleadings is the property of the firm of R. Moorman & Co.; whereas, it is submitted, it belongs to the separate estate of Robert Moorman. 2. That the plaintiff's right of action therefor was not barred by the statute of limitations when he commenced this action; whereas, it is submitted, whether the bank stock was or was not in equity the property of the said firm and liable for its debts, the plaintiff's right of action therefor was so barred.

*Messrs. Suber & Caldwell*, for appellant.

*Mr. Y. J. Pope*, contra.

July 1, 1884. The opinion of the Court was delivered by

MR. CHIEF JUSTICE SIMPSON. A mercantile firm, consisting of the plaintiff, Albert G. Maybin, Reuben S. Chick, Pettus W. Chick, and R. Moorman, was formed in 1869, in Newberry county. The business was a general grocery, and continued until some time in 1873, when, Mr. Moorman having died, it was wound up. The two Chicks also died some time after Mr. Moorman. The partnership proved insolvent, and the surviving partners, consisting at that time of Maybin and the two Chicks, had to contribute from their private estate to the payment of the outstanding debts against the firm. During the existence of the partnership, to wit, on June 29, 1871, Mr. Moorman, who was the active business manager of the concern, and especially of the financial department and bookkeeping, being a subscriber for ten

shares in the bank of Newberry, charged himself with $1,000, drawn from the firm and used by him in paying for this stock, which stock has been since standing on the books of the bank as the individual property of Moorman, the dividends thereon having been received by him up to his death in 1873, and paid to his executor since up to 1878, the subsequent dividends still remaining in the bank.

Under this state of facts, the plaintiff, as survivor, instituted the action below in May, 1878, against the executor of R. Moorman, in which he prayed that the stock and dividends accrued since July 1, 1878, be adjudged the property of the firm, and be turned over to the plaintiff as survivor thereof. In other words, the action, though presenting some of the features of an equity proceeding, is in substance an action for the recovery of personal property, and must therefore be governed by the law as applicable to such actions, and especially the right of action must stand or fall upon the question of title, legal or equitable, in the plaintiff. The defendant, appellant, in his answer, claims title, and further pleads the statute of limitations.

The case was referred to the master, who reported the above facts, and the additional facts that in October, 1873, after the death of Mr. Moorman, the private accounts of the partners stood as follows: Robert Moorman, $3,368.10, subject to a credit for services unpaid $3,600, leaving to his credit $231.90; Albert G. Maybin, $4,178.50, less credit for services $4,000, leaving him indebted $198.05; R. S. Chick's account, $237.29, and Pettus Chick's, $2,335.27. The $1,000 drawn out by Mr. Moorman was included in his account of indebtedness above. After the dissolution of the firm, and after applying all available assets to the debts, there was still a balance of indebtedness outstanding of $9,959.35, to which the surviving partners contributed out of their private estate as follows: A. G. Maybin, $4,490.15; P. W. Chick, $2,245.07, and R. S. Chick, $2,245.07, leaving still a balance of $979.36 unpaid. It further appeared in evidence that A. G. Maybin's bank stock, and also that of P. W. Chick, each for $1,000, was paid out of the firm funds at the same time and in the same way as that of R. Moorman's.

Upon these facts, the master held as matter of law, first, that

the ten shares in the bank of Newberry having been purchased with partnership assets, and not having been accounted for by the deceased partner, belonged to the partnership; and, second, that the statute did not begin to run until the death of Moorman, October, 1873, and the plaintiff having commenced his action within six years thereafter, the action was not barred. Upon exceptions, the Circuit judge sustained the master as to both of these principles of law, and gave leave to the plaintiff to apply for such orders as might be necessary to obtain the stock, with costs to be paid out of the proceeds of said stock.

The main question involved in the appeal is as to the title to the stock. Has the plaintiff such title, either legal or equitable, as would authorize a recovery on his part? This is a very different question, it will be observed, from the accountability of the estate of Moorman for the money which he drew out and used in purchase of the stock. That question might be raised in a different proceeding, but it is not involved here. Is the title of this stock in the plaintiff as survivor of the partnership? It is conceded that the stock was taken by Mr. Moorman as an individual and in his own name. It was so entered when the subscription was made, and it has so continued ever since, the dividends being paid to him during his life, and to his executor since his death up to 1878. It is clear, therefore, that as to the legal title the plaintiff has no standing. In fact the recovery is not urged upon that ground, but it is contended that, Mr. Moorman having used partnership funds in the purchase of this stock, the partnership has an equitable title which may be enforced by the proceeding below, and the effort is to bring the case under the operation of the principle which allows trust funds to be followed into the property in which it may be invested in violation of the trust.

This principle is a correct principle, and has been long established, but does it apply here? Was Mr. Moorman a trustee in the sense of this principle, and was it a violation of his duty as one of the partners to draw from the firm assets the sum which he did, and appropriate it to his own use in the purchase of this stock? This is the turning point of the case. There is no doubt that each partner can bind the firm within the scope of the

partnership. By the partnership itself they hold each other out to the world as worthy of confidence. This is necessary to the success of enterprises involving associated capital, and in the absence of fraud or conspiracy they can each draw from the common till for their own and individual purposes, charging themselves at the same time with the amount so drawn. They can pay their individual debts by giving credit to their creditor on a claim due by him to the concern when *bona fide* done. "One of several copartners can discharge his individual debts to a third person by releasing or giving a receipt to such person for a debt due by him to the firm." *Survivors of Halls, Kirkpatrick & Co.* v. *Coe, Green & Randolph,* 4 *McCord,* \*137.

There is no allegation or intimation, springing either from the testimony or presented in the argument, of fraud or conspiracy on the part of Mr. Moorman; on the contrary, this is especially disclaimed on all hands, and it is apparent that there was no concealment of the transaction by Mr. Moorman from his partners. He drew the money from the till and promptly charged himself with the amount. It is true he kept the books, but they were open to the inspection of the other members of the firm, and if they failed to become acquainted with this fact, this was due as much to their own negligence and inattention as to any default of duty on the part of Mr. Moorman.

In the absence of concealment of the transaction, and of all purpose secretly and improperly to appropriate a portion of partnership assets to his own use, and in the presence of the fact that he charged himself upon the books with the amount drawn out, we think, under the law applicable to partnerships and the facts of this case, he had the right to do so, and having done so, he became a debtor to the concern for said amount; that the stock purchased became his individual property, and is not subject to the equitable claim of the plaintiff. This would be the law independent of the fact that Mr. Moorman was a salaried employé of the concern, with his salary as salary unpaid at the time; but with this fact appearing, there is still greater reason why the transaction should be unimpeachable.

Under the view which we have taken of the case above, it is unnecessary to discuss the question of the statute of limitations

raised in the appeal. We think the judgment of the Circuit Court, that the bank stock in question, with the unpaid dividends thereon, is the property of the late firm of R. Moorman & Co., was error, and therefore on that ground said judgment should be reversed.

The judgment of this court is that the judgment of the Circuit Court be reversed.